EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Sucesión de Rafael Gilberto Concepción<br>    Peticionaria<br><br>            v.<br><br>Banco de Ojos del Leonismo Puertorriqueño; Estado Libre Asociado; Funeraria La Cruz<br>    Recurridas | Certiorari<br><br>2001 TSPR 24 |

Número del Caso: CC-1998-74

Fecha: 28/febrero/2001

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Jeannette Ramos Buonomo

Abogada de la Parte Peticionaria:
                            Lcda. Lourdes Mantero Hormazábal

Abogados de la Parte Recurrida:

                            Lcdo. Armando Lasa Ferrer
                            Lcda. Joanna Nevares Rivero

Oficina del Procurador General:

                            Lcda. Rosana Márquez Valencia
                            Procuradora General Auxiliar

Materia: Daños y Perjuicios

        Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sucesión de Rafael Gilberto
Concepción

      Peticionaria

         v.

                     CC-1998-74     CERTIORARI

Banco de Ojos del Leonismo
Puertorriqueño; Estado
Libre Asociado; Funeraria
la Cruz

      Recurridas

SENTENCIA

San Juan, Puerto Rico, a 28 de febrero de 2001

Al cuerpo sin vida de Rafael Gilberto Concepción Rosado le fue practicada una autopsia en el Instituto de Ciencias Forenses, por mandato de ley[1], debido al hecho de éste haber fallecido en un accidente de tránsito. Además de llevar a cabo la referida autopsia, personal del mencionado Instituto procedió a la remoción de las córneas; hecho del cual se enteraron sus familiares posteriormente.

Los familiares del occiso radicaron una demanda de daños y perjuicios ante la Sala Superior de San Juan del Tribunal de Instancia contra, entre otros, el Instituto de Ciencias Forenses y el Banco de Ojos del Leonismo

---

[1] **Ley Núm. 13 de 24 de julio de 1985.**

**Puertorriqueño, reclamando una compensación por el alegado acto ilegal de remoción de córneas sin el consentimiento previo del finado o de sus familiares.**

El Instituto y el Banco de Ojos solicitaron la desestimación de la demanda, bajo las disposiciones de la Regla 10.2 de las Reglas de Procedimiento Civil, la cual solicitud fue denegada por el foro de instancia. En revisión, vía recursos de certiorari radicados por el Instituto y el Banco de Ojos, el Tribunal de Circuito de Apelaciones emitió sentencia <u>revocatoria</u> de la denegatoria del foro de instancia de desestimar la demanda radicada. Resolvió el foro apelativo intermedio que la Ley de Donaciones Anatómicas[2] <u>no</u> requiere que los familiares de un occiso presten su consentimiento para que el Instituto pueda remover ciertos órganos del cadáver del mismo, determinando, en consecuencia, que la parte demandante carecía de causa de acción; razón por la cual desestimó la demanda radicada en el presente caso.

Expedimos el auto de certiorari, radicado por la parte demandante en revisión de la sentencia emitida por el Tribunal de Circuito de Apelaciones. En el mismo, la parte demandante sostiene que erró el foro apelativo intermedio:

> "...al interpretar la Ley de Donaciones Anatómicas, supra, en el sentido de que permita que un cadáver sometido al procedimiento de autopsia por disposición de ley le conceda al Instituto de Ciencias Forenses la autoridad para poder disponer de los órganos, tejidos y glándulas sin necesidad de una donación previa ni del consentimiento de los familiares cercanos del muerto, siempre y cuando tal remoción no afecte la apariencia física del cadáver ni interfiera con la investigación forense."
>
> "...al decidir que los familiares de un cadáver al cual se le practique autopsia no tengan derecho a reclamación meritoria en [d]años y [p]erjuicios por concepto de sufrimiento y angustias mentales por entender que no era necesario el consentimiento de éstos para poder el Estado disponer de los órganos del cadáver y haber los demandados-recurridos actuado conforme a la ley, por lo que no se justifica la concesión de un remedio bajo la Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2."

**Luego de un ponderado examen y análisis de las leyes aplicables, del historial legislativo de las mismas, y de la jurisprudencia pertinente, llegamos a la conclusión que procede decretar la <u>confirmación</u> de la sentencia emitida por el Tribunal de Circuito de Apelaciones.**

**Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rebollo López y la Juez Asociada señora Naveira de Rodón emitieron Opiniones de Conformidad. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente. El Juez Asociado señor Hernández Denton disiente por entender que la Ley de Donaciones Anatómicas según está redactada es inconstitucional por violar la dignidad de los familiares del finado. El Juez Asociado señor Rivera Pérez no interviene.**

Isabel Llompart Zeno
**Secretaria del Tribunal Supremo**

---

[2] **18 L.P.R.A. sec. 731, et. seq.**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Sucesión de Rafael Gilberto
Concepción

     Peticionarios

        v.

                      CC-1998-74          CERTIORARI

Banco de Ojos del Leonismo
Puertorriqueño; Estado
Libre Asociado; Funeraria
la Cruz

     Recurridos

Opinión de Conformidad emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 28 de febrero de 2001

¿Puede el Instituto de Ciencias Forenses remover las córneas de un cadáver que está bajo su autoridad sin el consentimiento de los familiares? <u>Entendemos que sí</u>. ¿Tienen alguna causa de acción los familiares del finado que, posterior a la remoción de córneas durante una autopsia, reclaman los daños que les ocasionó el que dicha ablación se llevara a cabo sin su autorización? <u>Opinamos que no</u>.

La Ley de Donaciones Anatómicas, 18 L.P.R.A. 731-731w, según ha sido enmendada, tiene el propósito <u>claro</u> y <u>específico</u> de aligerar los trámites para lograr la donación de órganos,

tejidos, glándulas y córneas. Estas últimas son extraídas de cadáveres para que personas no videntes puedan recobrar la visión con el transplante del minúsculo tejido que tan sólo mide 12mm x 12mm. A la luz de la clara y precisa letra de la ley y de la intención legislativa, plasmada claramente en el historial de la ley, es que somos del criterio que la Sentencia que hoy emite el Tribunal, confirmatoria la misma de la emitida por el Tribunal de Circuito de Apelaciones, es una jurídicamente correcta.

I

El 22 de marzo de 1995, murió trágicamente Rafael Gilberto Concepción Rosado. Debido a que éste falleció en un accidente automovilístico, su cuerpo fue trasladado al Instituto de Ciencias Forenses (Instituto) para practicarle una autopsia, según lo ordena y exige la Ley Núm. 13 de 24 de julio de 1985, 34 L.P.R.A. sec. 3003 y ss.

Mientras el cadáver se encontraba bajo la autoridad del Instituto, <u>el mismo fue sometido no sólo a la autopsia correspondiente sino también a la remoción de córneas</u>. Meses después, la familia del occiso se enteró, <u>a través de una copia del informe del protocolo de autopsia</u>, que el finado había sido sometido a dicho procedimiento. Los familiares de Concepción Rosado no recuerdan que este hiciera una manifestación en vida sobre la posibilidad de donar sus órganos. Tampoco a ellos se les pidió autorización antes de la remoción.

La Sucesión Concepción Rosado, incluyendo a la viuda del causante, radicaron demanda en daños y perjuicios, contra el Estado Libre Asociado de Puerto Rico (E.L.A.); el Instituto de Ciencias Forenses; el Banco de Ojos del Leonismo Puertorriqueño (Banco de Ojos) y la Funeraria La Cruz, la cual transportó el cadáver del lugar del accidente al Instituto de Ciencias Forenses. En la demanda estos reclamaron indemnización por las angustias mentales sufridas a consecuencia de lo que ellos alegan fue un "acto ilegal" realizado por los demandados.[3] El mismo consistió en extraer las córneas a Concepción Rosado sin el consentimiento de sus familiares.

Posteriormente el E.L.A., en representación del Instituto de Ciencias Forenses, presentó una Moción de Desestimación al amparo de la Regla 10.2 de las de Procedimiento Civil[4], 32 L.P.R.A. Ap.III R. 10.2, ante el Tribunal de Primera Instancia. El Banco de Ojos

---

[3] El Artículo 1802 del Código Civil es la base legal para esta causa de acción.

[4] Regla 10.2 de Procedimiento Civil:
"Toda defensa de hechos o de derecho contra una reclamación en cualquier alegación, ya sea demanda, reconvención, demanda contra coparte, o demanda contra tercero, se expondrá en la alegación respondiente que se haga a las mismas, en caso de que se requiera dicha alegación respondiente, excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante moción debidamente fundamentada: (1) falta de jurisdicción sobre la materia; (2) falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia

se unió posteriormente a dicha moción[5]. Celebrada la vista para atender la referida solicitud, el Tribunal de Primera Instancia denegó la misma. Cimentó su errada determinación en el hecho de que los familiares tenían una causa de acción dimanante de la propia Ley de Donaciones Anatómicas, 18 L.P.R.A. sec. 731, et seq. En específico, resolvió que, para que la remoción de córneas fuera conforme a derecho, era necesario que el finado hubiese hecho la donación en vida o que los familiares consintieran expresamente a ello.

A raíz de esta determinación, el Banco de Ojos[6] y el E.L.A. radicaron recursos de certiorari ante el Tribunal de Circuito de Apelaciones. En el mismo, alegaron que la Ley de Donaciones Anatómicas permite al Instituto remover las córneas de los cadáveres que estén siendo sometidos a una autopsia sin la necesidad del consentimiento de sus familiares. Ambos alegaron haber obrado de buena fe al actuar de acuerdo con lo que se autoriza en la Ley de Donaciones.

El Tribunal de Circuito de Apelaciones[7] expidió el auto y, eventualmente, <u>revocó</u> la decisión del Tribunal de Primera Instancia. El reputado foro apelativo correctamente entendió que la Ley de Donaciones Anatómicas, supra, <u>no requiere consentimiento de familiares para remover ciertos órganos a los cadáveres que estén siendo sometidos a una autopsia</u>. Por ello, el foro intermedio concluyó que los demandantes no tenían causa de acción y desestimó el recurso.

Declarada sin lugar la solicitud de reconsideración que radicaron los demandantes, éstos acudieron en revisión --vía certiorari-- ante este Tribunal. <u>Expedimos el auto</u>.

---

del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; (6) dejar de acumular una parte indispensable. Una moción en que se formule cualesquiera de estas defensas deberá presentarse antes de alegar, si se permitiere una alegación adicional. No se entenderá renunciada ninguna defensa u objeción por haber sido formulada conjuntamente con otra u otras defensas u objeciones en una alegación respondiente o moción. Si una alegación formulare una reclamación contra la cual la parte no estuviere obligada a presentar una alegación respondiente, dicha parte podrá mantener en el juicio cualquier defensa de hechos o de derecho en contra de dicha reclamación. Si en una moción en que se formulare la defensa número (5) se expusieren materias no contenidas en la alegación impugnada y éstas no fueren excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a dicha moción bajo dicha regla.

[5] Antes de unirse a la Moción de Desestimación, el Banco de Ojos presentó su "Contestación de la Demanda" en la cual levantó como defensa afirmativa que el Título 18, Sección 731 (g), Incisos (a) y (b) otorga inmunidad total a los empleados de la entidad a la que representan.

[6] El Banco de Ojos sometió el recurso al cual posteriormente se unió el E.L.A.

[7] En un panel integrado por los Jueces Ramos Buonomo, González Román y Córdova Arone.

**La controversia planteada es sencilla, a saber**: si la Ley de Donaciones autoriza al E.L.A., a través del Instituto de Ciencias Forenses, a remover las córneas de un cadáver sin la autorización en vida de esa persona o de sus familiares más allegados. Al igual que lo resuelto en la Sentencia emitida por el Tribunal, entendemos que sí. Veamos porqué.

## II

En el entorno procesal, la Regla 10.2 de Procedimiento Civil, supra[8], permite al demandado solicitar que se desestime la demanda en su contra cuando, entre otras razones, esta "no expone una reclamación que justifique la concesión de un remedio". A los fines de disponer de una moción de desestimación, el tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda radicada. <u>Harguindey Ferrer</u> v. <u>Universidad Interamericana</u>, res. el 7 de abril de 1999, 99 TSPR 48; <u>Ramos</u> v. <u>Marrero</u>, 116 D.P.R. 357, 369 (1985). El promovente de la referida moción tiene que demostrar que, presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio. <u>Pressure Vessels</u> v. <u>Empire Gas</u>, 137 D.P.R. 497 (1994).

Esta doctrina se aplica solamente a los hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. <u>Pressure Vessels</u> v. <u>Empire Gas</u>, ante. En el citado caso también expresamos que la demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo a su reclamación.

## III

La Ley de Donaciones Anatómicas[9] fue aprobada para <u>acelerar</u> el procedimiento para la donación de órganos luego que una persona fallece. El reconocimiento de los grandes beneficios que tienen las donaciones para el desarrollo de la medicina y para mejorar la calidad de vida de pacientes en listas de espera de diferentes órganos vitales para su salud <u>no</u> está en discusión. <u>Resulta de vital importancia mantener presente que el poco tiempo después de la muerte durante el cual los órganos son viables para transplantes, es el mayor obstáculo para llevar a cabo los mismos</u>. Este es uno de los problemas que pretende solucionar la Ley de Donaciones, *supra*, <u>cuya expresa finalidad</u>, en lo pertinente, es "ayudar a suplir la carencia de córneas, debido al gran número de personas que podrían recuperar la visión tan sólo mediante un transplante de dicho tejido ocular."[10]

Por disposición de la Ley de Donaciones se autorizó tanto al Estado a remover las córneas como al Banco de Ojos para aceptarlas. Esta autorización está <u>claramente dispuesta</u>

---

[8] Ver nota al calce núm. 1.

[9] La Ley de Donaciones Anatómicas fue objeto de discusión y enmiendas tan recientemente como en 1996. Véase Ley núm. 207 del 9 de septiembre de 1996.

[10] La Exposición de Motivos de la Ley Núm. 33 de 29 de mayo de 1984 reitera ese mismo propósito al aprobar ciertas enmiendas.

en la Ley de Donaciones en lo referente a los cadáveres que, por mandato legal, deben ser sometidos a una autopsia. <u>Aquí no hay margen alguno para interpretaciones</u>.

La razón para que el legislador nombre al E.L.A. como posible ente autorizador de la donación es, a nuestro entender, sencilla y justificada. Es el Estado el que está en inmediato control del cadáver y es el llamado a tomar dicha determinación debido a la urgencia que requiere el procedimiento. Por otro lado, sugerir que el consentimiento del familiar más cercano ocurriría después de llevada a cabo la autopsia tampoco sería una alternativa práctica, no sólo por retrasar la donación y la entrega del cuerpo, sino por representar una carga adicional de trabajo para el personal del Instituto. Es precisamente por la urgencia que requieren las ablaciones que surge la Ley de Donaciones que hoy se cuestiona. Con su aprobación el legislador intentó reducir el tiempo entre la muerte y la ablación con el legítimo interés de que pacientes que continúan en listas de espera puedan recobrar su visión sin que ello implique una violación a los derechos de los familiares.

Resolver en contra de lo que claramente dispone la referida Ley derrotaría su propósito y constituiría un patente, craso y constitucionalmente prohibido acto de legislación judicial. La labor de este Tribunal no es establecer política pública; eso corresponde a las otras dos Ramas de nuestro Gobierno.

La intención legislativa y el propósito social que inspira la legislación que hoy interpretamos es tan patente, claro y preciso que resulta hasta sorprendente que alguna persona lo interprete de forma contraria. Entre estos, puede mencionarse la discusión de las enmiendas propuestas para el P de la C 1040, que, con su aprobación, liberaron de responsabilidad, tanto en lo civil como en lo penal, a los médicos, y sus ayudantes, que participan en la ablación; al Banco de Ojos, sus funcionarios o asociados, y al paciente que las reciba. Con el lenguaje claro del estatuto el legislador quiso <u>proteger</u> la donación en caso que un familiar del donante alegare que tenía que prestar su autorización para la misma.[11] <u>Esta inmunidad es necesaria e importante</u>.

En el historial legislativo del P de la C 1040[12], el legislador expuso que entre los asuntos considerados para la aprobación de estas enmiendas estuvo, y tomó en cuenta, el apoyo del pueblo a este tipo de procedimiento. Surge claramente del debate legislativo que una de las mayores preocupaciones del legislador al aprobar la Ley de Donaciones lo fue el respeto a la voluntad de los familiares en cuanto a la donación de córneas[13]. Sin embargo, dicha referencia a los familiares se hace sólo en el Artículo 6[14] y no en el Artículo 8[15],

---

[11] Informe de la Comisión de Salud y Bienestar de la Cámara de Representantes sobre el P de la C 1040, mayo de 1979.

[12] Ley Núm. 152 de 20 de julio de 1979 que enmienda la Ley Núm. 11 del 15 de abril de 1974.

[13] La donación a la que se refiere el Artículo 6, puede hacerse siempre que no exista impedimento alguno por parte de las personas indicadas por ley.

[14] "Donaciones-Donantes

(a) Cualquier persona de dieciocho (18) años de edad o mayor podrá donar su cuerpo entero o cualquier parte de éste a las personas, instituciones o entidades incluidas en este Capítulo para fines de autopsias clínicas, estudios anatómicos o para ser utilizadas con el propósito de ayudar al progreso de la ciencia médica y ramas anexas para la enseñanza o para el trasplante o rehabilitación de parte o tejidos enfermos, lesionados o degenerados del cuerpo humano. Tal donación será efectiva con posterioridad a la muerte del donante excepto en los casos de donación de órganos o tejidos a ser trasplantados de una persona viva a otra.

(b) Las siguientes personas, en el orden que se indica con exclusión de cualquier otro familiar, podrán disponer de todo o parte del cuerpo de un finado para los propósitos de este Capítulo:
      (1) El cónyuge viudo o supérstite que conviviere con el otro cónyuge fenecido a la hora de su muerte;
      (2) el hijo mayor y, en ausencia o incapacidad de éste, el próximo en edad, siempre y cuando fuere mayor de edad;
      (3) el padre y, en ausencia o incapacidad de éste, la madre;
      (4) el abuelo o abuela con quien viviere;
      (5) el mayor de los hermanos de doble vínculo y, a falta de éstos, el mayor de los medio hermanos;
      (6) el tutor del finado al momento de la muerte o el familiar o persona particular que se hubiere ocupado del finado durante su vida;
      (7) cualquier persona o entidad autorizada u obligada por la ley a disponer del cadáver.

(c) El hospital o médico encargado de la autopsia o extirpación de un órgano o tejido para trasplante queda exonerado de responsabilidad si la persona que alega ser la autorizada a disponer en todo o en parte del cuerpo de un finado, según el Inciso (b) de esta sección, resulta posteriormente que no es la legalmente facultada para hacerlo."

[15] "Procedimiento; exención de responsabilidad
      (a) La donación de una parte o de la totalidad de un cadáver, la autorización para practicar una autopsia clínica, o la donación de un órgano para trasplante vivo se hará por documento público o documento privado, suscrito ante notario, o por documento privado ante dos (2) o más testigos sin la concurrencia de notario. Disponiéndose, sin embargo, que a los cadáveres bajo la jurisdicción del Estado Libre Asociado de Puerto Rico que se les practique autopsia por disposición de ley, el patólogo, el médico forense, el oftalmólogo, cirujano o sus ayudantes podrán remover las córneas, glándulas, órganos, tejidos o partes para ser entregadas a la Junta, para los fines y propósitos de este Capítulo, siempre y cuando la remoción de dichas glándulas, córneas, órganos o tejidos no interfiera con la ejecución de la autopsia, con alguna intervención que se esté realizando por las autoridades competentes, o que altere la apariencia física post mortem del cadáver. Cuando se trate de córneas, éstas serán entregadas libre de costo al Banco de Ojos del Leonismo Puertorriqueño u otros bancos de ojos acreditados que se establezcan en un futuro, sin fines de lucro.

(b) Quedarán exentos de responsabilidad civil y criminal, el médico forense o su ayudante, el oftalmólogo, el residente en oftalmología, los Bancos de Ojos o sus funcionarios, así como el paciente donatario que reciba las córneas de un donante finado por motivo de que con posterioridad a la remoción de las córneas se

que es el que específicamente atiende y regula la situación que plantea el caso ante nuestra consideración. En el Artículo 8, se establece, sin lugar a dudas, que en relación "a los cadáveres bajo la jurisdicción del Estado Libre Asociado de Puerto Rico que se les practique autopsia por disposición de ley, el patólogo, el médico forense, el oftalmólogo, cirujano o sus ayudantes podrán remover las córneas, glándulas, órganos, tejidos o partes para ser entregadas a la Junta, para los fines y propósitos de las secs. 731 a 731n de este título...".[16] El Inciso (b) de ese Artículo 8 (8 L.P.R.A. sec. 731g) dispone que <u>los que participen en el procedimiento de remoción y posterior transplante de las córneas estarán exentos de cualquier acción legal incoada posteriormente por familiares</u>.[17] Evidentemente, el propósito de esta disposición estatutaria no sólo es promover y viabilizar los trasplantes de córneas sino que proteger a quienes participan en la remoción de los mismos siempre y cuando estén en posesión legal del cadáver. <u>Es decir, el legislador, al aprobar la Ley de Donaciones y sus posteriores enmiendas, otorgó inmunidad total tanto a los empleados del E.L.A., como a los del Banco de Ojos, para que éstos pudieran proceder con la debida celeridad en la remoción de las córneas y en la entera confianza de que el acto que realizan es uno revestido de legalidad.</u>

De esta forma vemos cómo el legislador lleva a cabo un balance entre el interés público de lograr la donación de córneas y la protección de la integridad del cadáver. Esto último se logra al prohibir la remoción cuando esta altere la apariencia física del finado más allá de lo que, obviamente, ocurrirá durante la autopsia. También se advierte en la propia Ley de Donaciones que la autopsia tendrá prioridad sobre la remoción de glándulas, órganos y córneas ya que se prohibe que ese proceso entorpezca de alguna manera con la investigación forense.

## IV

Por otro lado, se argumenta que los familiares son los primeros llamados a tomar la determinación de si un cadáver puede o no ser utilizado para un transplante de órganos o tejidos. Dicho argumento se basa en el orden de prelación que se dispone en el Artículo 6 de la Ley, supra, añadiendo que tal orden es excluyente. Este argumento, <u>tomado aisladamente</u>, es correcto. Sin embargo, debemos recordar que las leyes no se interpretan

---

alegara por persona alguna que era necesaria su autorización o conocimiento previo.

(c) Todo donatario de tejido, órgano, o cadáver o parte del mismo, o de un cuerpo para autopsia clínica, y todo notario ante quien se otorgue un documento de donación anatómica, o de revocación de la donación de un cadáver o de parte del mismo, deberá enviar copia simple bajo su firma del documento en cuestión a la Junta de Disposición de Cuerpos, Organos y Tejidos Humanos dentro de un plazo de setenta y dos (72) horas de otorgado el documento."

[16] Sección 731g de la Ley Núm. 11 de 15 de abril de 1974, 8 L.P.R.A. sec. 731-731w.

[17] "Quedarán exentos de responsabilidad civil y criminal, el médico forense o su ayudante, el oftalmólogo, el residente en oftalmología, los Bancos de Ojos o sus funcionarios, así como el paciente donatario que reciba las córneas de un donante finado por motivo de que con posterioridad a la remoción de

en el vacío sino las unas con las otras. Sec. del Trabajo v. J. C. Penney, 119 D.P.R. 660, 665 (1987); Román Cruz v. Díaz Rifas, 113 D.P.R. 500, 505 (1982). Una detenida lectura del Artículo 6 es suficiente para comprender que este no es el artículo que regula la situación aquí planteada.

El Artículo 6 atiende las donaciones en dos situaciones específicas. La primera, Inciso (a), se refiere a la persona que fallece dejando un documento donde dispone de su cuerpo. La segunda situación, Inciso (b), se activa cuando la persona que fallece no ha dispuesto lo que debe hacerse con sus restos mortales y tampoco fallece en circunstancias que requieran una autopsia. Es ante estas circunstancias, y no otras, que entra en función la lista excluyente que se menciona en el Inciso (b) del Artículo 6 y que requiere la autorización de los familiares del finado. Ninguna de esas dos situaciones está presente en el caso ante nuestra consideración.

La citada Ley de Donaciones, no hay duda, contiene varias disposiciones que tienden a evidenciar el hecho de que los familiares "participen" en la donación de los órganos o tejidos de sus seres queridos. Esa realidad en nada afecta el caso ante nos. Si bien es cierto que esa potestad que se reconoce a los familiares es evidente en ciertas circunstancias, también es indiscutible que el Artículo 8 es el que resulta aplicable a la situación ante nuestra consideración ya que es el que regula la situación de un cuerpo que está bajo la jurisdicción del E.L.A., por tener que practicársele una autopsia, pueda ser sometido a la remoción de las córneas sin necesidad de que los médicos que la practican reciban una autorización expresa para ello.


V

La Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. sec. 3077 y ss (en adelante, Ley 104), es el estatuto a través del cual el E.L.A. prestó su consentimiento para ser demandado por los daños que sus empleados puedan ocasionar al actuar en forma negligente. Para que prospere una causa de acción bajo esta Ley, es necesario que los daños sean causados por funcionarios o empleados públicos actuando dentro del marco de sus funciones, cargo o empleo. 32 L.P.R.A. sec. 3077(a). La propia Ley 104 contiene las excepciones a través de las cuales el gobierno conserva su inmunidad. El Artículo 6, Inciso (a), del estatuto enumera dichas situaciones.[18] Entre ellas, el estado

---

las córneas se alegara por persona alguna que era necesaria su autorización o conocimiento previo."

[18] "Artículo 6. Acciones no autorizadas.

Nada en las secs. 3077 et seq. de este título autoriza las acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:
(a) en el cumplimiento de una ley o reglamento, aun cuando éstos resultaren ser nulos;
(b) en el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción;
(c) en la imposición y cobro de contribuciones;

expresamente retiene su inmunidad cuando los actos son cometidos por un empleado suyo en el cumplimiento de una ley o reglamento, aun cuando posteriormente estos resulten ser nulos.

No hay duda que, al respecto, se debe determinar, en primer término, si los funcionarios del Instituto, empleados del E.L.A., actuaron conforme con lo prescrito en la Ley de Donaciones. Se argumenta erróneamente, en nuestra opinión, que en el presente caso estos no actuaron conforme a lo allí establecido ya que los funcionarios en cuestión debieron hacer un esfuerzo razonable para localizar a los familiares del occiso con el propósito de obtener su autorización previo a la ablación de las córneas.

Como hemos visto, ese requisito ––el cual originalmente existió–– hoy no se exige. El legislador expresamente lo eliminó de la Ley de Donaciones Anatómicas.

VI

Por otro lado, y al considerar la interrogante de si las disposiciones del citado Artículo 8 de la Ley de Donaciones Anatómicas exime, o no, al Banco de Ojos de responsabilidad civil, se argumenta que dichas disposiciones eximientes sólo aplican en situaciones en que las córneas han sido "donadas" por las personas autorizadas para ello. Este errado razonamiento se fundamenta en que, alegadamente, el Artículo 8(b) de la Ley de Donaciones hace referencia al "donante finado" y que, por tanto, el Banco de Ojos sólo está exento de responsabilidad cuando la ablación ocurre en el cadáver de una persona que autorizó en vida la donación de sus órganos. En definitiva, se argumenta que el Banco de Ojos no está inmune a acciones como la que hoy se trae ante nos ya que el finado en el presente caso nunca donó sus órganos en vida. No estamos de acuerdo.

La Ley de Donaciones define "donante" como cualquier persona que hace una donación de todo o parte de su cuerpo o que, estando autorizada para ello, dona el cadáver a otra persona.[19] Nos parece evidente que la definición en la Ley incluye al E.L.A. como donante

---

(d) constitutivo de acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, arresto ilegal, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura;
(e) ocurrida fuera de la jurisdicción territorial del Estado;
(f) en el desempeño de operaciones de combate por las fuerzas aéreas, navales o militares en casos de guerra, invasión, rebelión u otra emergencia, debidamente declaradas como tales por las autoridades pertinentes. Disponiéndose, que gozará el Estado de la misma inmunidad que concede esta sección por las operaciones de combate de las fuerzas aéreas, navales o militares de Puerto Rico, incluyendo específicamente, pero sin que esto se entienda como una limitación, la Guardia Nacional de Puerto Rico, cuando dichas fuerzas sean movilizadas o utilizadas total o parcialmente por las autoridades pertinentes para actuar en apoyo de las fuerzas de seguridad pública, incluyendo específicamente, pero sin limitarse a ésta, la Policía de Puerto Rico, en operaciones para combatir la criminalidad y el narcotráfico o mantener o restablecer la seguridad pública siempre que ésta se vea amenazada por cualquier motivo, incluyendo, pero sin limitarse a éstas, la criminalidad y el narcotráfico."

[19] "Artículo 2. Definiciones.

en casos en que tenga el cadáver bajo su legítima autoridad. Teniendo tal potestad, el Estado puede donar las córneas y, por lo tanto, los empleados suyos que realicen esa gestión, de acuerdo a lo dispuesto en la Ley de Donaciones, no pueden estar sujetos a acciones civiles o penales de ningún tipo.

El Artículo 8(a) de la propia Ley de Donaciones taxativamente enumera las únicas posibles limitaciones para que el cadáver de una persona, que está siendo sometido a una autopsia, no pueda ser sometido también a la remoción de las córneas. Estas son: que no interfiera con la ejecución de la autopsia, con alguna intervención que se esté realizando o que altere la apariencia *post mortem*.

En este caso los demandantes ni tan siquiera alegaron en su demanda algún hecho que sustente la posibilidad de que la ablación realizada interfirió, de alguna manera, con la autopsia realizada. Por otro lado, podemos razonablemente concluir que no hubo una alteración en la apariencia *post mortem* del cadáver ya que resulta claro de la propia demanda radicada que "la parte demandante se dio cuenta de que al cadáver le faltaban las córneas cuando obtuvo el Informe Médico-Forense de Autopsia...". Resulta obvio, sin restarle importancia al comprensible dolor por la pérdida de un ser querido, que los familiares demandantes nunca observaron una posible mutilación en el cadáver. En consecuencia, nada aquí nos mueve a concluir que estamos ante una violación a la disposición que prohibe una alteración a la apariencia *post mortem* del cadáver.

Por último, debe señalarse que la jurisprudencia es clara en cuanto a la forma en que deben ser interpretadas las leyes. En Famania v. Corp. Azucarera, 113 D.P.R. 654, 657-658 (1982), señalamos que "[n]uestra función es interpretar la ley y no juzgar su bondad o sabiduría. Por eso, no debemos frustrar los propósitos de un estatuto cuando la letra es clara y expresa sin ambigüedad la intención del legislador." (Enfasis nuestro.)

Mas aun, en Romero Barceló v. Hernández Agosto, 115 D.P.R. 368, 403 (1984), haciendo un análisis del Artículo 8.001 de la Ley Electoral, este Tribunal expresó que cuando la ley es clara "[n]o hay necesidad de que persona alguna pierda su tiempo "escudriñando" su historial legislativo." También hemos señalado que el objeto y fin de toda interpretación estatutaria es determinar el significado del estatuto de que se trate. Cuando ese significado lo expresa la Legislatura misma en términos claros e inequívocos, no hay margen ni excusa para interpretaciones. Martínez v. Junta Insular de Elecciones, 43 D.P.R. 413 (1932).

Es incuestionable que, en el estatuto que hoy ocupa nuestra atención, el legislador tuvo la intención de eliminar el requisito que otorgaba a los familiares potestad para autorizar o denegar la donación de las córneas cuando el cadáver estaba siendo sometido

---

Los siguientes términos tendrán el significado que a continuación se expresa:

a una autopsia. <u>Así lo hizo constar en la fraseología que utilizó</u>. Por lo tanto, resulta innecesario cualquier ejercicio con el propósito de "escudriñar" el "verdadero propósito" de la Ley de Donaciones.

Este Tribunal <u>no</u> tiene autoridad para dar marcha atrás a la legislación aquí en controversia. La Ley de Donaciones Anatómicas y su historial son claros y, como Tribunal Supremo, no podemos más que hacerla cumplir dejando a un lado nuestras particulares visiones utópicas de cómo quisiéramos que fuese el planeta.

Por los fundamentos antes expresados es que estamos conformes con el resultado al que se llega en la Sentencia emitida por el Tribunal en el presente caso.


FRANCISCO REBOLLO LOPEZ
Juez Asociado

---

(a) "Donante" significa cualquier persona que hace una donación de todo o parte de su cuerpo o que estando autorizada dona el cadáver de otra persona."

Sucesión de Rafael Gilberto
Concepción

     Peticionaria

        v.                        CC-1998-74

Banco de Ojos del Leonismo
Puertorriqueño; E.L.A.;
Funeraria La Cruz

      Recurridos

**Opinión de conformidad emitida por la Juez Asociada señora Naveira de Rodón.**

**San Juan, Puerto Rico, a 28 de febrero de 2001**

I

El 22 de marzo de 1995 el Sr. Rafael Gilberto Concepción Rosado falleció como consecuencia de un accidente automovilístico. Su cuerpo se trasladó al Instituto de Ciencias Forenses de Puerto Rico (en adelante el Instituto) para practicarle una autopsia, según lo requiere la ley orgánica de éste. Ley Núm. 13 de 24 de julio de 1985, según enmendada, 34 L.P.R.A. § 3003 y ss. Posteriormente, los familiares del señor Concepción Rosado se percataron, al leer el protocolo de la autopsia, que al cadáver de éste le habían removido las córneas

"sin el consentimiento del causante o sus herederos de forma ilegal y caprichosa y en violación a las leyes que existen en el Estado Libre Asociado, sobre este particular".[20] La Sra. Zoila Lugo, viuda del señor Concepción Rosado y los hijos de éste (en adelante la Sucesión Concepción) presentaron una demanda contra el Estado Libre Asociado de Puerto Rico (en adelante E.L.A.), el Instituto y el Banco de Ojos del Leonismo Puertorriqueño (en adelante Banco de Ojos). Reclamaron indemnización por los alegados daños emocionales y angustias mentales sufridos como consecuencia de la actuación negligente de los demandados de remover las córneas del señor Concepción Rosado.

El E.L.A., en representación del Instituto, solicitó la desestimación de la demanda argumentando que ésta no exponía una reclamación que justificase la concesión de un remedio. Señaló que la Ley de Donaciones Anatómicas, 18 L.P.R.A. § 731 y ss., según enmendada, (en adelante Ley de Donaciones Anatómicas) permite que a los cadáveres que se encuentran bajo la jurisdicción del Estado se les remuevan las córneas, los tejidos y órganos, aun en ausencia de una donación *ante mortem* y sin el consentimiento previo de los familiares del finado.[21] Posteriormente, el Banco de Ojos se unió a la solicitud de desestimación. El foro de instancia la denegó tras concluir que la Sucesión Concepción podría tener una causa de acción debido a que la Ley de Donaciones Anatómicas no permite a los funcionarios estatales la ablación de las córneas de un finado sin que éstas hubiesen sido donadas o sin requerir autorización previa de los familiares del finado.

Oportunamente, el Banco de Ojos y el E.L.A. recurrieron ante el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan, el cual revocó al foro de instancia. El foro apelativo acogió la teoría esbozada por los demandados en la moción de desestimación y resolvió que la Ley de Donaciones Anatómicas le confiere autoridad al Instituto para extraer órganos y tejidos del cuerpo de un finado, sin requerir consentimiento alguno. Concluyó, por lo tanto, que la Sucesión Concepción no tenía una causa de acción en daños y perjuicios contra los demandados.

**Inconformes, la Sucesión Concepción recurrió ante nosotros con los siguientes señalamientos de error:**

> **PRIMERO: Erró el Honorable Tribunal del Circuito de Apelaciones al interpretar la Ley de Donaciones Anatómicas en el sentido que permita que un cadáver sometido al procedimiento de autopsia por disposición de ley le conceda al Instituto de Ciencias Forenses la autoridad para poder disponer de los órganos, tejidos y glándulas sin necesidad de una donación previa ni del consentimiento de los familiares cercanos del muerto, siempre y cuando tal remoción no afecte la apariencia física del cadáver ni interfiera con la investigación forense.**

> **SEGUNDO: Erró el Honorable Tribunal del Circuito de Apelaciones al decidir que los familiares de un cadáver al cual se le practique autopsia no**

---

[20] La Ley de Donaciones Anatómicas, 18 L.P.R.A. § 731a(i), define córnea como: "la membrana transparente en la superficie del ojo que mide alrededor de 12 mm x 12 mm (milímetros)".

[21] El Art. 2(c) de la Ley de Donaciones Anatómicas, 18 L.P.R.A. § 731a(c) define <u>finado</u> como "una persona difunta e incluye a los nacidos muertos y los fetos".

tengan un derecho a reclamación meritoria en [d]años y [p]erjuicios por concepto de sufrimiento y angustias mentales por entender que no era necesario el consentimiento de éstos para poder el Estado disponer de los órganos del cadáver y haber los demandados-recurridos actuado conforme a la ley, por lo que no se justifica la concesión de un remedio bajo la Regla 10.2 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2

Veamos si procede o no la moción de desestimación.

II

Una moción de desestimación, Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III debe interpretarse liberalmente a favor de la parte contra quien se promueve. Candal v. CT Radiology Office, Inc., 112 D.P.R. 227, 231 (1982). Al entender en dicha moción, el tribunal tiene que tomar como ciertos, a los solos propósitos de decidir dicha moción, todos los hechos bien alegados en la demanda. También tiene que considerarla no sólo a la luz del derecho reclamado, sino tomando en cuenta cualquier derecho que proceda en ley a tenor con lo expuesto en la demanda. En otras palabras, una demanda no debe ser desestimada por **insuficiencia en las alegaciones,** a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualesquier hechos que puedan ser probados en apoyo de su reclamación. Reyes v. Sucesión Sánchez Soto, 98 D.P.R. 305, 309 (1970).

Por otro lado, el denegar la moción de desestimación no implica que el demandante tenga *ipso facto* una causa de acción a su favor. Lo que implica es que podría tenerla, si los hechos que logre probar justifican la concesión de un remedio.

El deber del tribunal ante una moción de desestimación no es determinar los méritos finales de la reclamación con el propósito de decidir cuál de las partes prevalecerá. Su deber más bien es considerar si, a la luz de la situación más favorable al demandante y **resolviendo toda duda a favor de éste,** la demanda es suficiente para presentar una reclamación válida. Sacarello v. Junta de Retiro, 75 D.P.R. 267 (1953); Colón v. San Patricio Corp., 81 D.P.R. 242, 266 (1959); Figueroa Piñeiro v. Miranda & Eguía, 83 D.P.R. 554, 558 (1961); Reyes v. Sucesión Sánchez Soto, 98 D.P.R. 305, 309-310 (1970).

III

Las visiones sociales y preceptos legales en torno a la donación de órganos se han ido transformando a medida que pasan los años. Los avances médicos han contribuido a esta constante evolución social y estatutaria. La perspectiva socio-legal está en un punto que, si bien persigue facilitar la obtención de órganos, tejidos o alguna otra parte de un cuerpo humano, podría estar al filo de violentar el delicado balance que existe en el campo bioético y moral. En la lucha para impedir que se trastoque este balance, se utilizan conceptos y términos como autonomía, beneficencia, muerte clínica y consentimiento informado. Éstos

se han convertido en elementos constantes en el discurso socio-legal de la donación de órganos. Las innumerables enmiendas que ha sufrido la Ley de Donaciones Anatómicas son evidencia de las reacciones al constante cambio que sufren los contrapesos de este delicado balance.

Con esto en mente, pasemos a analizar el caso de autos.

IV

Según surge de la demanda, el señor Concepción Rosado falleció como consecuencia de un accidente automovilístico en la Avenida Jesús T. Piñero. Su cadáver fue trasladado al Instituto de Ciencias Forenses.

La demanda, en el párrafo 6, expone que el Instituto le realizó al causante una autopsia. En el informe de autopsia se hizo constar que "las pupilas no se pueden evaluar ya que fueron removidas las córneas". La Sucesión Concepción alega que la causa próxima de los daños sufridos por ésta, daños emocionales y angustias mentales, fue la falta de consentimiento o autorización del señor Concepción Rosado o su sucesión a la remoción de las córneas. Alegaron específicamente, que "dichas córneas fueron sustraídas sin el consentimiento del causante o sus herederos de forma ilegal y caprichosa y en violación a las leyes que existen en el Estado Libre Asociado, sobre este particular".

El Estado (E.L.A.) solicitó la desestimación. De otra parte, el codemandado, Banco de Ojos contestó la demanda negando y aceptando algunos párrafos y expuso como una de las defensas afirmativas la inmunidad concedida al Banco de Ojos por el Art. 8(b) de la Ley de Donaciones Anatómicas, *supra*. Dos meses más tarde, el Banco de Ojos solicitó unirse a la desestimación presentada por el E.L.A.

La Sucesión se opuso a la desestimación. Con dicha oposición acompañó documentos relativos a opiniones sociales y religiosas sobre la donación de órganos, estatutos pertinentes y la discusión plasmada en el Diario de Sesiones de la Asamblea Legislativa.

V

La Ley de Donaciones Anatómicas, *supra*, dispone que cualquier persona que cuente con dieciocho (18) años de edad o más puede hacer una donación *ante mortem* de su cuerpo o parte de éste. La donación puede ser para estudios anatómicos o para el transplante y rehabilitación de órganos y tejidos enfermos. Ley de Donaciones Anatómicas, *supra*, 18 L.P.R.A. § 731e. Si una persona fallece sin haber expresado su voluntad al respecto, el familiar inmediato, en exclusión de cualquier otro y según el orden de prelación establecido en la propia ley, está autorizado para donar su cuerpo, órganos y tejidos.[22]

---

[22] Ley de Donaciones Anatómicas, *supra*, 18 L.P.R.A. § 731(e).

El Art. 8 de la Ley de Donaciones Anatómicas, *supra*, 18 L.P.R.A. § 731g, establece el procedimiento a seguir para realizar una donación. Dicha disposición estatutaria ha sido enmendada en varias ocasiones.

Según la redacción original del artículo, la única forma de realizar una donación era mediante documento, ya fuese público o privado, pero en ambos casos era preciso la concurrencia de un notario y de, al menos, dos testigos idóneos. Veamos.

Art. 8

(a) La donación de una parte o de la totalidad de un cadáver, la donación del cuerpo para practicar una autopsia clínica, o la donación de un órgano para trasplante vivo <u>se hará por documento público o por documento privado, suscrito ante Notario, concurriendo dos o más testigos idóneos</u>. De hacerse por disposición testamentaria, la donación será efectiva desde la muerte del testador, sin sujeción a juicio testamentario ni convalidación. (Énfasis nuestro.)

La primera enmienda al artículo citado se realizó mediante la Ley Núm. 141 de 1 de julio de 1975. Ésta consistió en permitir que la donación anatómica se realizase mediante documento público o privado suscrito <u>ante una persona autorizada a tomar juramento</u> o ante un notario.[23]

Posteriormente, la Ley Núm. 152 de 20 de julio de 1979 (en adelante, Ley Núm. 152) enmendó nuevamente el artículo. Ésta flexibilizó el referido procedimiento, permitiendo que la donación de órganos se realizase mediante documento privado otorgado ante dos testigos, sin que fuese necesaria la concurrencia de un Notario. Esto permitía que la donación se llevase a cabo aun en aquellos casos de emergencia en los que no fuese posible conseguir a un abogado.

De otra parte, la Ley Núm. 152 también tuvo por finalidad ayudar a suplir la carencia de córneas, debido al gran número de personas que podrían recuperar la visión tan sólo mediante un trasplante de dicho tejido ocular. En específico, la exposición de motivos de la Ley Núm. 152, indicaba lo siguiente:

A pesar de este esfuerzo [por promover la donación de córneas] existe una situación en la cual no se logra tener a la disposición de los cirujanos, suficientes córneas para atender a los pacientes que pueden recibirla. <u>Se debe ello en gran parte a que las personas que han donado sus córneas no comunican a sus familiares su donación y a su muerte los Bancos de Ojos de Puerto Rico no son informados diligentemente dentro de las primeras seis horas después del fallecimiento para que ocurra la remoción de la córnea y el trasplante correspondiente. En otros casos los familiares no tienen conocimiento de cuál es la operación quirúrgica mediante la cual se remueve una córnea y pueden, a última hora, establecer algunos inconvenientes que causa se pase el período de seis a ocho horas después del deceso dentro del cual se debe remover la córnea para que ésta sirva para el transplante [sic]</u> (Énfasis nuestro.)

---

[23] **El artículo enmendado rezaba de la siguiente forma:**

(a) La donación de una parte o de la totalidad de un cadáver, la donación del cuerpo para practicar una autopsia clínica, o la donación de un órgano para trasplante vivo se hará por documento público o por documento privado, suscrito ante Notario, <u>o persona autorizada a tomar juramento, y ante dos testigos idóneos</u>. De hacerse por disposición testamentaria, la donación será efectiva desde la muerte del testador, sin sujeción a juicio testamentario. (Énfasis nuestro.)

(b)

Para lograr la finalidad propuesta, el legislador incluyó en la ley la definición de "córnea" y estableció un procedimiento específico para las donaciones de ésta.[24] El artículo enmendado rezaba de la siguiente forma:

Art. 8

(a) La donación de una parte o de la totalidad de un cadáver, la donación del cuerpo para practicar una autopsia clínica, o la donación de un órgano para transplante [sic] vivo se hará por documento público o por documento privado, suscrito ante Notario, o por documento privado ante dos o más testigos sin la concurrencia de abogado. De hacerse por disposición testamentaria, la donación será efectiva desde la muerte del testador, sin sujeción a juicio testamentario ni convalidación. Disponiéndose, sin embargo, que de ser solicitado tejido corneal para transplante [sic] a un paciente del Banco de Ojos del Leonismo Puertorriqueño o de cualquier otro Banco de Ojos de Puerto Rico, el médico forense o su ayudante, el oftalmólogo, el residente en oftalmología, podrá remover las córneas de un donante finado y entregarlas al Banco de Ojos del Leonismo Puertorriqueño siempre y cuando existan las siguientes condiciones:

(1) El cadáver esté bajo la jurisdicción del Estado Libre Asociado de Puerto Rico y se requiera una autopsia por ley.

(2) No exista impedimento alguno por las personas indicadas en el Artículo 6(b) y en el orden que allí se indica con exclusión de cualquier otro familiar.

(3) La remoción de las córneas no ha de interferir con la ejecución de la autopsia del cadáver o de alguna investigación que se estuviera llevando a cabo por las autoridades competentes.

(b) Quedarán exentos de responsabilidad civil y criminal, el médico forense o su ayudante, el oftalmólogo, el residente en oftalmología, los Bancos de Ojos o sus funcionarios, así como el paciente donatario que reciba las córneas de un donante finado por motivo de que con posterioridad a la remoción de las córneas se alegara por persona alguna que era necesaria su autorización o conocimiento previo. (Énfasis nuestro.)

De una lectura cuidadosa del precepto citado surgía con meridiana claridad que éste le confería autoridad a médicos forenses o a oftalmólogos para remover las córneas de un cadáver y entregárselas al Banco de Ojos, sin que fuese preciso que existiese una donación *ante mortem*. Ahora bien, la facultad otorgada estaba sujeta al cumplimiento de las siguientes condiciones particulares: (i) que se tratara de un cadáver bajo la jurisdicción del E.L.A. al que hubiese que practicarle una autopsia por mandato legal; (ii) que la remoción de las córneas no interfiriese con la ejecución de la autopsia ni con alguna investigación que se estuviese llevando a cabo y, por último, (iii) que no existiese impedimento alguno del familiar inmediato del finado.

A pesar de que el estatuto no exigía expresamente que se le notificase al familiar inmediato del finado de la ablación de las córneas para trasplante, la propia fraseología del artículo era indicativa de que era preciso avisarle o hacer un esfuerzo razonable por contactarlo para inquirir si tenía alguna objeción. En otras palabras, si la Ley de Donaciones Anatómicas, *supra*, prohibía la extracción de las córneas si el familiar inmediato del finado se oponía, resulta forzoso concluir que era menester que el Banco de Ojos o la Junta indagasen en torno a su voluntad, que en efecto le brindasen la oportunidad

---

[24] Véase la definición de "córnea" en la nota al calce núm. 1.

de expresar sus objeciones, si alguna.[25] El examen del récord médico del finado también podría ser una forma de indagar si éste o sus parientes inmediatos objetaban la donación de las córneas.

Por otro lado, la Ley Núm. 152, *supra*, también añadió un precepto que eximía de responsabilidad, tanto civil como criminal, a los funcionarios autorizados a remover las córneas si después de la ablación alguna persona alegaba que era menester su conocimiento u obtener su autorización.

El artículo citado fue derogado parcialmente por la Ley Núm. 33 de 29 de mayo de 1984 (en adelante, Ley Núm. 33). Ésta tiene por finalidad atemperar la Ley de Donaciones Anatómicas, *supra*, con la evolución de nuestra sociedad y facilitar el proceso de donación. En específico, la exposición de motivos de la Ley Núm. 33, *supra*, expresa que la enmienda tiene el propósito de:

> ...aligerar el proceso de adquirir tejidos (glándulas, hueso, piel, etc.), órganos (riñón, corazón, cerebro, etc.), o parte de ellos (córneas, etc.) para que éstos puedan ser efectivamente utilizados en trasplantes o investigaciones científicas. La remoción de estos tejidos en ninguna forma altera la apariencia *post mortem* del cadáver.

La ley enmendatoria derogó el inciso (a) del art. 8 de la Ley de Donaciones Anatómicas, *supra*, 18 L.P.R.A. § 731g y lo sustituyó por el siguiente:

Art. 8

> (a) La donación de una parte o de la totalidad de un cadáver, la autorización para practicar una autopsia clínica, o la donación de un órgano para trasplante vivo se hará por documento público o documento privado, suscrito ante Notario, o por documento privado ante dos o más testigos sin la concurrencia de Notario. Disponiéndose, sin embargo, que a los cadáveres bajo la jurisdicción del Estado Libre Asociado de Puerto Rico que se les practique autopsia por disposición de ley, el patólogo, el médico forense, el oftalmólogo, cirujano o sus ayudantes podrán remover las córneas, glándulas, órganos, tejidos o partes para ser entregadas a la Junta, para los fines y propósitos de esta ley; siempre y cuando la remoción de dichas glándulas, córneas, órganos o tejidos no interfieran con la ejecución de la autopsia, con alguna intervención que se esté realizando por las autoridades competentes, o que altere la apariencia física *post mortem* del cadáver. Cuando se trate de córneas, éstas serán entregadas libre de costo al Banco de Ojos del Leonismo Puertorriqueño u otros bancos de ojos acreditados que se establezcan en un futuro, sin fines de lucro. (Énfasis nuestro.)

Contrario a su antecesor, el artículo citado permite la extracción no sólo de córneas, sino de glándulas, órganos y tejidos de cadáveres bajo la jurisdicción del E.L.A. a los que se les practique una autopsia por mandato legal. Para ello es menester que se cumplan

---

[25] El proyecto de ley, P. de la C. Núm. 1040, que luego se convirtió en la Ley Núm. 152, *supra*, en su redacción original leía de la siguiente forma:

2. El médico forense, o su ayudante, no tenga conocimiento de que existe objeción alguna de las personas enumeradas en el Art. 6 (b) de esta ley.

Esta redacción se alteró y fue sustituida por la frase "[n]o exista impedimento alguno por las personas indicadas en el Artículo 6(b) y en el orden que allí se indica con exclusión de cualquier otro familiar". Esto es ilustrativo de que, previo a la ablación del tejido cornear, se requería más que la mera ignorancia del forense de objeciones de los familiares del finado. Era menester que, en efecto, el familiar no objetara la extracción.

determinados requisitos.  El nuevo artículo eliminó la referencia a los posibles impedimentos u objeciones de los familiares inmediatos del finado.

El Tribunal de Circuito interpretó que el legislador eliminó el referido requisito de forma consciente y ponderada, para facilitar la adquisición de órganos.  Interpretó, además, que la frase "cadáver bajo la jurisdicción del E.L.A." se refiere a la autoridad legal que tiene el Instituto, organismo que es parte del Estado, para realizar autopsias en las circunstancias contempladas por ley.  En virtud de lo anterior, el foro apelativo concluyó que cuando un cadáver tiene que ser sometido a un procedimiento de autopsia por mandato legal, el Instituto tiene autoridad para extraer tejidos y órganos, incluyendo las córneas, sin requerir consentimiento alguno, siempre y cuando no se afecte la apariencia física del cuerpo y que la extracción no afecte una investigación forense.

La Sucesión Concepción, por el contrario, argumentó que en todo caso de ablación de tejidos u órganos es indispensable contar con la donación previa del finado o, en su defecto, con el consentimiento de los familiares.

La adecuada solución de este caso requiere que interpretemos el alcance de la enmienda efectuada a la legislación de donaciones anatómicas mediante la Ley Núm. 33, *supra*.  Al hacerlo, no sólo debemos examinar la cronología del precepto aquí en controversia, sino que es preciso examinar el historial legislativo para descubrir cuál fue el propósito social del legislador al aprobar la enmienda.  Véase, Chévere v. Levis Goldstein, res. el 15 de marzo de 2000, 2000 J.T.S. 56; In re Campoamor Redín, res. el 24 de enero de 2000, 2000 J.T.S. 25; Pueblo v. Zayas Rodríguez, res. el 17 de febrero de 1999, 99 TSPR 15; Consejo de Titulares v. Galerías Ponceñas, Inc., res. el 16 de abril de 1998, 98 T.S.P.R. 43, 98 J.T.S. 45; El Vocero de P.R. v. E.L.A., 131 D.P.R. 356, 432 (1992).

Estudiado el historial legislativo del Art. 8(a), concluimos que el legislador pretendió facilitar la obtención de órganos.  Como a los cuerpos que están bajo la jurisdicción del E.L.A. se les requiere por ley una autopsia, y que para hacer la misma no se requiere consentimiento alguno, el legislador, tomando en consideración que la ablación de las córneas requiere que este procedimiento se lleve a cabo dentro de un tiempo relativamente corto después de la muerte (de seis (6) a ocho (8) horas), estimó conveniente que con relación a esos mismos cadáveres se pudiese disponer de sus córneas sin requerir el consentimiento de los familiares.  El legislador claramente limitó dicha disposición de órganos, glándulas o tejidos con tres supuestos:  (1) si no interfería con la ejecución de la autopsia; (2) si no interfería con alguna investigación de una autoridad competente; (3) si no alteraba la apariencia física *post mortem* del cadáver.

El Tribunal de Circuito resolvió que la Sucesión Concepción no tenía una causa de acción contra el Banco de Ojos ni contra el E.L.A. porque éstos actuaron de conformidad con la Ley de Donaciones Anatómicas.  Concluyó, por lo tanto, estaban exentos de responsabilidad.  En el caso del E.L.A., basó su determinación en la Ley de Reclamaciones

y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1955, 32 L.P.R.A. § 3077 y ss (en adelante, Ley Núm. 104). En cuanto al Banco de Ojos, resolvió que la propia Ley de Donaciones Anatómicas, *supra*, lo eximía de responsabilidad.

Constituye doctrina reiterada que el E.L.A. ha dado su consentimiento para ser demandado en daños y perjuicios, cuando éstos fueron ocasionados por empleados o funcionarios públicos que actuaron de forma negligente durante el desempeño de los deberes propios de su cargo o empleo. <u>García</u> v. <u>E.L.A.</u>, res. el 13 de octubre 1998, 98 T.S.P.R. 131, 98 J.T.S. 133.

Ahora bien, la Ley Núm. 104, *supra*, contiene un listado de excepciones en las que el E.L.A. conserva su inmunidad, entre éstas, cuando la acción en daños y perjuicios se basa en actuaciones u omisiones de un empleado o funcionario "en el cumplimiento de una ley o reglamento, aún [sic] cuando éstos resultaren ser nulos". Ley Núm. 104, *supra*, § 3081(a).[26]

La Sucesión Concepción basa su reclamación en el hecho de que se practicó la ablación de las córneas y su donación sin obtener el consentimiento del causante o sus herederos. Por lo tanto, una causa de acción contra el E.L.A. depende, en primera instancia, de si los funcionarios del Instituto actuaron dentro del curso de conducta prescrito en la Ley de Donaciones Anatómicas. Es decir, si para llevar a cabo la ablación y donación necesitaban previamente obtener el consentimiento del causante o sus herederos.

Al estudiar el historial legislativo del artículo pertinente de la Ley de Donaciones Anatómicas, no podemos concluir que el mismo, tal y como está redactado al presente, requiera consentimiento alguno de los familiares en ausencia de la donación expresa del causante.[27] No existe causa de acción por daños emocionales basada en la falta de consentimiento. Por tal razón, procede la desestimación de la demanda en contra del Instituto.

En cuanto al Banco de Ojos, el Tribunal de Circuito resolvió que el Art. 8(b) de la Ley de Donaciones Anatómicas, 18 L.P.R.A. § 731, lo exime de responsabilidad civil en aquellos casos en que alguna persona alega que era menester obtener su consentimiento, previo a la remoción de las córneas de un cadáver.

---

[26] Ley Núm. 104, *supra*, § 3081(a) dispone en lo pertinente, lo siguiente:

Nada en las secs. 3077 *et seq* de este título autoriza las acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:

(a) en el cumplimiento de una ley o reglamento, aún cuando éstos resultaren ser nulos.

(b)

[27] Cabe señalar que las alegaciones de la demanda, interpretadas liberalmente a favor de la Sucesión Concepción no expresan, ni insinúan, alguna posible violación a derechos constitucionales. La Sucesión Concepción tampoco impugna la constitucionalidad del referido Art. 8(a) basado en la exclusión de requerir consentimiento.

La exención de responsabilidad del Art. 8(b) sólo se activa en caso que se alegara falta de conocimiento previo o autorización por parte de alguna persona. Esto es lo que precisamente se alega en la demanda, la falta de consentimiento como causa próxima a los daños sufridos por la Sucesión Concepción, por lo que el Banco de Ojos tiene una exención de responsabilidad estatutariamente expresa. Por consiguiente, también procede la desestimación de reclamación contra el codemandado Banco de Ojos.

Por los fundamentos anteriormente expuestos, estamos conformes con la sentencia de este Tribunal, que confirma la dictada por el Tribunal de Circuito de Apelaciones, Circuito Regional de San Juan.


Miriam Naveira de Rodón
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

La Sucesión de Rafael Gilberto
Concepción y Otros

    Demandante-Recurrente

        vs.

                                CC-1998-74         Certiorari

Banco de Ojos del Leonismo
Puertorriqueño; Estado Libre
Asociado; Funeraria La Cruz

    Demandados-Recurridos

**Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.**

**San Juan, Puerto Rico, a 28 de febrero de 2001.**

Concurro con los miembros de la mayoría del Tribunal que han emitido opiniones de conformidad en cuanto a la interpretación que hacen en el caso de autos de la Ley de Donaciones Anatómicas, según enmendada. Dicha legislación autoriza en efecto que se extraigan órganos de cadáveres sometidos a autopsias, sin requerir el consentimiento de los familiares inmediatos de la persona fallecida, cuando ésta no había expresado su voluntad sobre ello.

Sin embargo, me parece que, con efectos prospectivos, hemos debido atemperar la legislación aludida a los hondos valores y costumbres de nuestra cultura sobre la disposición de cadáveres. En mi criterio, se ha debido exponer la inconstitucionalidad de la legislación en cuestión como está redactada actualmente, por ser contraria al derecho a la

intimidad de los familiares inmediatos de un finado. En otras palabras, hemos debido resolver sobre fundamentos de índole constitucional que, previo a la ablación de cualquier órgano o tejido de un cadáver, se requiere la anuencia del familiar más inmediato del finado, si es que éste no hizo la correspondiente donación en vida. La particular garantía de nuestra Constitución sobre la protección de la vida privada y familiar ciertamente abarca la situación que aquí nos concierne. El respeto y la reverencia por el cuerpo del familiar inmediato que ha fallecido es parte integral de nuestra realidad cultural. Por ello, la ablación de partes de ese cuerpo por extraños que ni siquiera han conversado sobre el particular con los familiares inmediatos referidos constituye un proceder ofensivo y doloroso para éstos. Atenta contra sensibilidades humanas muy arraigadas en nuestro modo de ser como pueblo. Atenta contra la integridad de la vida privada y familiar que nuestra Constitución protege. En vista de lo anterior, la autorización que otorga la ley en cuestión conflige con el derecho fundamental a la intimidad, por lo que hemos debido modificar la disposición estatutaria referida para salvaguardar su constitucionalidad.[28] Así lo hemos hecho antes en Ramírez de Ferrer v. Mari Brás, res. el 18 de noviembre de 1997, 142 D.P.R. ___, 97 JTS 134; en P.R.P. v. E.L.A., 115 D.P.R. 631 (1984); y en Milán Rodríguez v. Muñoz, 110 D.P.R. 610 (1981), en todos los cuales salvamos impedimentos constitucionales ampliando el estatuto en cuestión.

En resumen, pues, aunque concurro con la mayoría en cuanto a que la Ley de Donaciones Anatómicas permite que ablaciones como la que nos concierne aquí puedan realizarse sin la anuencia del familiar más cercado del finado, entiendo también que por fundamentos de índole constitucional debía requerirse para casos futuros la anuencia referida. Como la mayoría no preceptúa tal requerimiento, yo Disiento.


JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO

---

**[28]  La situación de autos también podría ser ilícita al amparo de la cláusula del debido proceso de ley. Véase, Brotherton v. Cleveland, 923 F 2d 477 (1991).**